Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234



FILED

FEB 17 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**IN THE U.S. District Court - District of Delaware**

Steven D. Humes                    )

Plaintiff                          )

v.                                 )    Case No. 06-59 KAJ

                                   )

State of Delaware,                 )

Court of Common Pleas, et al. )

## NOTICE OF MOTION

TO:  Stephani J. Ballard

     Deputy Attorney General

     820 North French Street

     Wilmington, DE 19801

     Attorney for State of Delaware Defendants

PLEASE TAKE NOTICE that the attached Motion will be

presented to the Court by *Steven D. Humes, Plaintiff* at the

convenience of the Court.

*Plaintiff*

Dated: February 17, 2006

Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234

**IN THE U.S. District Court - District of Delaware**

Steven D. Humes                    )

Plaintiff                          )

                                   )

v.                                 )    C.A. No. 06-59 KAJ

State of Delaware,                 )

Court of Common Pleas, et al.  )

Defendant(s)                       )

**MOTION TO AMEND COMPLAINT**

1. Plaintiff Motions this court to amend this complaint to include the following as Defendants:

A. Alex Smalls

Sherry Simmons

Jane Doe (Alex Smalls court Assistant)

Individually and in Official Capacity

Court of Common Pleas

500 N. King Street

Wilmington, DE 19801

B. Shawn Martyniak

Deputy Attorney General

Individually and in Official Capacity

Department of Justice

820 N. French Street 7th Floor

Wilmington, DE 19801

C. International Chiropractic Pediatric Association

(I.C.P.A.)and OHM Chiropractic

327 N Middletown Road

Media, PA 19063

2. Add the words "Individually and in Official Capacity" to each Delaware State Trooper.

3. Change Items 1,25-29, 38 to state as follows:

1. Plaintiff, Steven D. Humes, formerly of New Jersey, now residing at 4838 Plum Run Court, Wilmington, Delaware 19808 operated a computer store at Fox Run Shopping Center in Bear, Delaware on or about January 2004.

25. Plaintiff was intentionally treated differently than other citizens; the laws of Delaware if applied would

have provided protections to Plaintiff's business, business
income and business property.

26. This court has jurisdiction to hear this case
pursuant to the Rules of this U.S. District Court -
District of Delaware 28 U.S.C.A. §1332, since the claims for
relief occurred in Delaware and Plaintiff was a New Jersey
resident when these actions took place.

27. This court has jurisdiction to hear this case
pursuant to the Rules of this U.S. District Court -
District of Delaware 28 U.S.C.A. §1331 and 42 U.S.C.A.
§1983, Plaintiff was denied access to the Laws of Delaware
by the Defendants, violating his constitutional rights to
equal justice; without color of law, and depriving his
privileges and immunities as provided by law.

28. The State of Delaware Laws state that the Delaware
State Police and Department of Justice are bound by law to
have performed this investigation and initiate charges when
they are warranted, as in this matter.

### § 1211. Official misconduct; class A misdemeanor.

A public servant is guilty of official misconduct when, intending to obtain a
personal benefit or to cause harm to another person:
(1) The public servant commits an act constituting an unauthorized exercise of
official functions, knowing that the act is unauthorized; or
**(2) The public servant knowingly refrains from performing a duty which is
imposed by law or is clearly inherent in the nature of the office; or**

(3) The public servant performs official functions in a way intended to benefit the public servant's own property or financial interests under circumstances in which the public servant's actions would not have been reasonably justified in consideration of the factors which ought to have been taken into account in performing official functions; or

**(4) The public servant knowingly performs official functions in a way intended to practice discrimination on the basis of** race, creed, color, **sex**, age, handicapped status or national origin.

29. The State Police of Delaware and Shawn Martyniak of the Delaware Attorney Generals office did intentionally not perform their duties to protect their un-investigated and wrongful charges against the Plaintiff thus depriving Plaintiff life, liberty, and property of not being able to conduct his business in a manner as if charges were not brought.

38. The plaintiff stated to the Delaware Authorities that laws were being ignored and that crimes were perpetrated against him including witness tampering. "Plaintiff stated to the Delaware Department of Justice, that his witness was offered money for services he performed for the Steven Humes for the I.C.P.A. project, this occurred during the trial.

4. Plaintiff adds "Request for Three Judge Trial".

5. All other amendments as underlined per court rules, including the addition of Count Six.

6. The basis for asking and granting this order is Federal
Rule of Civil Procedure 15(a) which provides that a party
may amend its complaint "by leave of court . . . and leave
shall be freely given when justice so requires." Fed. R.
Civ. P. 15(a). Although the trial court has discretion to
grant or deny leave to amend, leave should be freely
granted in accordance with Rule 15(a) unless there is an
apparent or declared reason for denial. *TruePosition, Inc.
v. Allen Telecom, Inc.*, 2002 U.S. Dist. LEXIS 12848 at *3
(D. Del. July 16, 2002) (citing *Foman v. Davis*,
371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962);
*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,
1434 (3d Cir. 1997)).


7. These amendments are within 20 days and no pleading to
the complaint have been made.

Rule 15. (a) Amendments.

A party may amend the party's pleading once as a matter of course at any time
before a responsive pleading is served or, if the pleading is one to which no
responsive pleading is permitted and the action has not been placed upon the trial
calendar, the party may so amend it at any time within 20 days after it is served.
Otherwise a party may amend the party's pleading only by leave of court or by
written consent of the adverse party; and leave shall be freely given when justice so
requires. A party shall plead in response to an amended pleading within the time
remaining for response to the original pleading or within 10 days after service of the
amended pleading, whichever period may be the longer, unless the court otherwise
orders.

8. Plaintiff has not yet served this complaint on the FBI
and I.C.P.A./ Ohm Chiropractric but will provide two copies
of the corrected complaint and the motion signifying an
amended complaint to both parties upon proper service.

9. Two corrected copies showing the changes have been provided to the court.

Plaintiff therefore asks this Honorable Court to issue an Order granting this motion.

By: _____

Steven D. Humes, Pro Se

Dated: February 17, 2006

Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234

---

**IN THE U.S. District Court - District of Delaware**

Steven D. Humes          )

Plaintiff                )

v.                       )   Case No. 06-59 KAJ

                         )

State of Delaware,       )

Court of Common Pleas, et al. )

**ORDER**

**NOW TO WIT,** this day of _____, 20__, Defendants Motion for Order of Protection is hereby granted.

IT IS SO ORDERED.

_____

J.

Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234

---

**IN THE U.S. District Court - District of Delaware**

Steven D. Humes                    )

Plaintiff                          )

v.                                 )      Case No. 06-59 KAJ

                                   )

State of Delaware,                 )

Court of Common Pleas, et al. )

## CERTIFICATE OF SERVICE

I, *Steven D. Humes*, do hereby certify that two (2) copies

of the attached Notice of Motion, Motion and Order were

*delivered by first class mail* to Stephani J. Ballard,

Deputy Attorney General, 820 N. French Street, Wilmington,

DE 19801, this day of 17 February 2006.

Plaintiff

Dated: February 17, 2006

Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234



FILED

FEB 17 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**IN THE U.S. District Court - District of Delaware**

| | | |
|---|---|---|
| Steven D. Humes | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 06-59 KAJ |
| **Alex Smalls** | **)** | |
| **Sherry Simmons** | **)** | |
| **Jane Doe (Alex Smalls court** | **)** | |
| **Assistant** | **)** | |
| **Individually and in Official** | ) | |
| **Capacity** | ) | |
| State of Delaware | ) | |
| Court of Common Pleas | ) | |
| 500 N. King Street | ) | |
| Wilmington, DE 19801 | ) | |
| and | | |
| Superior Court of Delaware | ) | |
| 500 N. King Street | ) | |

1

Wilmington, DE 19801                    )

And                                     )

**Shawn Martyniak** _____      **)**

**Individually and in Official**       **)**

**Capacity** _____                      )

State of Delaware                       )

Department of Justice                   )

820 N. French Street                    )

Wilmington, DE 19801                    )

And                                     )

Trooper Lafferty                        )

Trooper Sgt. Jones                      )

Captain Charles J. Simpson              )

Lt. William T. Ford                     )

Lt. Paul E. Smentkowski                 )

Lt. Mark Daniels                        )

**All Individually and in** _____      **)**

**Official Capacity** _____           )

Delaware State Police                   )

Troop 2 & Internal Affairs              )

Route 40                                )

Bear, DE 19701                          )

and                                     )

Federal Bureau of                       )

2

Investigation                       )

Wilmington Field Office             )

920 North King Street               )

Suite 104                           )

Wilmington, DE 19801                )

And                                 )

**International Chiropractic     )**

**Pediatric Association          )**

**(I.C.P.A.)and OHM              )**

**Chiropractic                   )**

**327 N Middletown Road          )**

**Media, PA 19063**                 )

Defendant(s)                        )


### CIVIL COMPLAINT

### REQUEST A THREE JUDGE TRIAL


### COUNT ONE


**Plaintiff repeats and reiterates the allegations of the**

**Second, Third, Fourth, Fifth, and Sixth Counts and makes**

**them a part hereof as though set forth at length herein**

3

**INTRODUCTION**

**1. Plaintiff, Steven D. Humes, formerly of New Jersey, now**
**residing at 4838 Plum Run Court, Wilmington, Delaware 19808**
**operated a computer store at Fox Run Shopping Center in**
**Bear, Delaware on or about January 2004.**

2. Plaintiff's store was contracted by an International
Chiropractic Pediatric Association (I.C.P.A.)
representative; Tim Kreider, on or about January 2004 to
perform a service and to provide a product.

3. The written and verbal agreement called for the data to
be recovered from a hard drive that had suffered a severe
failure and had lost all usable information.

4. The service and product was provided for as per this
agreement.

5. Plaintiff, Steven Humes delivered the Hard Drive with
the recovered data on or about January 10, 2004 and
demonstrated that it was recovered and usable.

6. I.C.P.A. has said and written that the data was not
recovered or was unusable and stopped payment.

7. The product; specifically the hard drive containing the
original restored data, was returned on or about 1/20/2004
and has never been paid for by I.C.P.A.

8. It is alleged that I.C.P.A. transferred the restored
data onto another hard drive before the return took place

4

and are using the recovered data without authorization from
Plaintiff.

9. I.C.P.A. and all of it's officers were notified by
letter that under Delaware Code Title 6 Article 2 Sales
that the data they are using was without authorization
belongs to plaintiff.

### § 2-602. Manner and effect of rightful rejection.

(4) A rejection or other refusal by the buyer to
receive or retain the goods, whether or not justified,
or a justified revocation of acceptance revests title
to the goods in the seller. **_Such revesting occurs by
operation of law and is not a "sale"_**. (5A Del. C.

1953, § 2-401; 55 Del. Laws, c. 349.)

10. Plaintiff was charged and convicted of misuse of his
own computer data in a trial that was unfair, unjust, and
illegally influenced by the Head Judge of the Court of
Common Pleas.

11. The matter is under appeal and the State of Delaware
continues to use its authority to delay, cover up and
distort justice to inhibit this civil action.

5

**FACTUAL ALLEGATIONS**

12. Plaintiff asked the Delaware State Police to
investigate the alleged criminal behavior(s) as documented
in a fax sent to Trooper Lafferty of the Delaware State
Police before any actions were taken.

13. No investigation was performed by the Delaware State
police into the allegations listed in that fax.

14. The Delaware State Police did not interview Feddly
Jeanniton; he performed the data recovery, or Ben Rybinski;
store clerk who took the order, or Tim Kreider; who dropped
off the drives and entered into contract, despite being
given each of these witnesses names and relevance.

15. The Delaware State Police did not send any one to the
business I.C.P.A., Jeanne Ohm's address, to the Plaintiff's
computer store, or to the Plaintiff's address to examine
any computers, software or data despite being asked to.

16. Plaintiff remains unpaid and no charges were filed
against I.C.P.A. or Jeanne Ohm despite clear evidence
supporting his allegations as true and that the following
Delaware criminal statutes were violated.

Delaware State Code Title 11 Article 933 Theft of
Computer Services. § 933.

6

A person is guilty of the computer crime of theft of
computer services when the person accesses or causes
to be accessed or otherwise uses or causes to be used
a computer system with the intent to obtain
unauthorized computer services, computer software or
data. (64 Del. Laws, c. 438, § 1; 70 Del. Laws, c.
186, § 1.)

§ 841. Theft; Class A misdemeanor; restitution.
(a) A person is guilty of theft when the person takes,
exercises control over or obtains property of another
person intending to deprive that person of it or
appropriate it. Theft includes the acts described in
§§ 842-846 of this title.

(b) A person is guilty of theft if the person, in any
capacity, legally receives, takes, exercises control
over or obtains property of another which is the
subject of theft, and fraudulently converts same to
the person's own use.

17. On October 26, 2004 the Deputy Attorney General Shawn
Martyniak and Delaware State Trooper Lafferty witnessed
that the Product that was contracted for (Data Recovery)

7

and not paid for by I.C.P.A. was as Plaintiff stated
recovered.

18. The data was demonstrated to be recovered in front of
the Delaware State Trooper and the Deputy Attorney General
and was usable as soon as a legal copy of Microsoft Office
was installed on a computer that had a properly licensed
copy of the Windows Operating System functioning.

19. The Delaware State Police and Department of Justice
were shown a copy of the receipt for software known as File
Scavenger that was specifically purchased by Plaintiff and
his associates to perform this data recovery.

20. The Delaware State Police and Department of Justice
were shown a copy of the Letter from I.C.P.A., and it's
officer Jeanne Ohm to the Pennsylvania Attorney Generals
Office fraudulently stating that no data was recovered and
that any recovered data was unusable.

21. Plaintiff is not allowed by Delaware Law to file a
criminal complaint for this alleged conduct without the
Department of Justice or the Delaware State Police's
approval.

22. Plaintiff has demanded that the Delaware State Police
and Delaware Department of Justice file charges in this
matter and protect his rights.

8

23. The Plaintiff has sent the Delaware State Police signed and notarized affidavits under penalty of perjury stating these facts and asking for charges to be filed.

24. The Delaware State Police and Department of Justice have refused to file these charges and to provide Plaintiff access to the Laws of Delaware.

25. Plaintiff was intentionally treated differently than other citizens based on his sex, age, and social economic status (and he did not personally know a Pennsylvania State Trooper named Caponi); the laws of Delaware if applied would have provided protections to Plaintiff's business, business income and business property.

JURISDICTION AND VENUE

26. This court has jurisdiction to hear this case pursuant to the Rules of this U.S. District Court - District of Delaware 28 U.S.C.A. §1332, since the claims for relief occurred in Delaware and Plaintiff was a New Jersey resident when these actions took place.

27. This court has jurisdiction to hear this case pursuant to the Rules of this U.S. District Court - District of Delaware 28 U.S.C.A. §1331 and 42 U.S.C.A. §1983, Plaintiff

9

was denied access to the Laws of Delaware by the

Defendants, violating his constitutional rights to equal

justice; thru color of law, and depriving his privileges

and immunities as provided by those laws.


28. The State of Delaware Laws state that the Delaware

State Police and Department of Justice are bound by law to

have performed this investigation and initiate charges when

they are warranted, as in this matter.

### § 1211. Official misconduct; class A misdemeanor.

A public servant is guilty of official misconduct when, intending to obtain a
personal benefit or to cause harm to another person:
(1) The public servant commits an act constituting an unauthorized exercise of
official functions, knowing that the act is unauthorized; or
**(2) The public servant knowingly refrains from performing a duty which is
imposed by law or is clearly inherent in the nature of the office; or**
(3) The public servant performs official functions in a way intended to benefit the
public servant's own property or financial interests under circumstances in which
the public servant's actions would not have been reasonably justified in
consideration of the factors which ought to have been taken into account in
performing official functions; or
**(4) The public servant knowingly performs official functions in a way
intended to practice discrimination on the basis of race, creed, color, sex, age,
handicapped status or national origin.**


29. The State Police of Delaware and Shawn Martyniak of the

Delaware Attorney Generals office did intentionally not

perform their duties to protect their un-investigated and

wrongful charges against the Plaintiff thus depriving

Plaintiff life, liberty, and property of not being able to

10

conduct his business in a manner as if charges were not
brought.

**BASIS FOR REQUESTED RELEIF**

30. United States Constitution, Fourteenth Amendment, §1
states that "nor shall any State … deny to any person
within its jurisdiction the equal protection of the laws."
31. The facts in this case which are indisputable show that
The State Police of Delaware did deny Plaintiff access to
and the protections of the laws of the State of Delaware in
violation of the Delaware State constitution and the
Plaintiffs rights guaranteed by the U.S. Constitution as a
citizen of the United States.

## REMEDIES

32. Plaintiff request that this Court grant a preliminary
injunction or a temporary restraining order to the
Plaintiff, pursuant to Federal Rules, restraining Defendant
The Delaware State Police from contacting, harassing, or in
any way causing the Plaintiff or his family to feel
threatened.

33. Plaintiff request that this court order the Federal
Bureau of Investigation or other authorities to perform an

11

investigation of alleged criminal violations made against
Plaintiff by the Delaware State Police in this matter.
34. WHEREFORE, Plaintiff, Steven D. Humes, requests
judgment in excess of the amount of $250,000 for lost
business in addition to punitive and exemplary damages and
all additional costs of documentation, suit, legal costs,
attorney consulting costs, expert fees and expenses,
discovery costs, other direct out of pocket costs, attorney
representation costs, costs of service, all miscellaneous
costs, Court Costs and costs of collection together with
interest.

## SECOND COUNT

Plaintiff repeats and reiterates the allegations of the
**First, Third, Fourth, Fifth, and Sixth** Counts and makes
them a part hereof as though set forth at length herein

## INTRODUCTION

35. Plaintiff sent letters, faxes, e-mails to the Delaware
State Police, Delaware State Police Troop 2 Captains and
Lieutenants, Officials of the Delaware Attorney Generals
Office, Delaware State Police Internal Affairs, Motions
seeking Justice to the Courts and Deputy Attorney General,
each pleading and in some cases emotionally begging the

12

authorities to perform their jobs honorably with fairness
and equal justice.

## FACTUAL ALLEGATIONS

36. The plaintiff states that he pleaded in writing with
the Delaware State Police "I am distraught and begging you
to perform your duties honorably and administer equal
justice."

37. The plaintiff states that he asked the authorities
including Captain Charles J. Simpson, Lt. William T. Ford
Lt. Paul E. Smentkowski, Lt. Mark Daniels, Shawn Martyniak,
Trooper Lafferty and Sgt. Jones to look clearly at the
evidence in faxes, letters, and e-mails and to apply the
Delaware Laws fairly.

38. The plaintiff stated to the Delaware Authorities that
laws were being ignored and that crimes were perpetrated
against him.

39. The plaintiff stated to the Delaware Authorities that
the law as per TITLE 6 Commerce and Trade SUBTITLE I
Uniform Commercial Code ARTICLE 2. SALES of Delaware code
if applied as written and meant to be enforced shows that
Steven Humes was arrested, prosecuted, and later convicted
for using his own data; **Plaintiff was denied access to the
Delaware State Laws and their protections.**

13

40. The plaintiff states that Shawn Martyniak, Judge Smalls, and Troopers Lafferty, Jones, Simpson, Ford, Smentkowski, Daniels all had specific knowledge of evidence supporting that a crime was perpetrated against Plaintiff and deliberately ignored, hid, and obscured it using their official positions in an unjust, illegal and immoral manner **denying life, liberty, and property.**

**41. The Plaintiff sent letter to the Delaware Department of Justice detailing alleged witness tampering "Jeanne Ohm approached Feddly Jenniton, during the trial, and offer to make money payment for data recovery services". Department of Justice has made no investigation or arrest in this matter even though this allegation substantially proves Jeanne Ohm of I.C.P.A.'s intention to defraud Plaintiff.**

42. The Deputy Attorney General used **a** suicide note in the sentencing phase of the trial and falsely stated that the Plaintiff threatened the Delaware State Police and asked Judge Smalls for jail time.

43. The Plaintiff sent a letter to the Delaware State Police Division of Internal Affairs seeking an investigation into the reasons why the Delaware State Laws were not being applied, **they refused.**

14

**44. The Plaintiff has been denied equal access to the laws and their protections and denied life, liberty, and property.**

### JURISDICTION AND VENUE

45. Same as Count One

### BASIS FOR REQUESTED RELEIF

46. The Plaintiff has the right to be treated equally by the law and fairly by the Delaware Courts, Delaware State Police, and Delaware Attorney Generals Office and was denied these rights by the Delaware Authorities which are guaranteed in the fourteenth amendment. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

### REMEDIES

WHEREFORE, Plaintiff, Steven D. Humes, requests judgment in excess of the amount of $250,000 for lost wages, emotional and physical pain and suffering in addition to punitive and exemplary damages and all additional costs of

15

documentation, suit, legal costs, attorney consulting
costs, expert fees and expenses, discovery costs, other
direct out of pocket costs, attorney representation costs,
costs of service, all miscellaneous costs, Court Costs and
costs of collection together with interest.


### THIRD COUNT

Plaintiff repeats and reiterates the allegations of the
**First, Second, Fourth, Fifth and Sixth Counts** and makes
them a part hereof as though set forth at length herein


### INTRODUCTION

47. Plaintiff states that Judge Smalls, Head Justice Court
of Common Pleas for the State of Delaware did intentionally
use his position to influence and cause the outcome of a
trial in favor of the State of Delaware.

48. The Plaintiff will show that this action of trial
fixing was to protect the State Police of Delaware from
charges and litigation caused by misuse of their authority.

49. Plaintiff will show from hard factual evidence that the
State of Delaware Court of Common Pleas did violate most
rules of evidence and every rule regarding constitutional

16

protection and rights provided by law to protect defendants against these exact types of abuse.

## FACTUAL ALLEGATIONS

50. Plaintiff was caused to appear before Judge Smalls of the State of Delaware Court of Common Pleas in a criminal matter (Case No. 0402006855).

51. Plaintiff states that Judge Smalls did use his official position as Head Justice of the Court of Common Pleas to intentionally influence the outcome of the trial in favor of the State of Delaware.

52. In a motion hearing that Judge Smalls presided over he was caused by the defendant (Plaintiff in this action) to hear and rule on a matter of Judicial Notice.

53. This motion was approximately 100 pages and the embodiment of several viable and legitimate defenses.

54. This motion was scheduled and rescheduled several times and was finally to be heard on October 22, 2004.

55. This motion hearing was abrupt and displayed that Judge Smalls had not read or properly considered the motion before he ruled on it.

56. Judge Smalls initially ruled that "That no such Motion existed".

17

57. The Plaintiff alleges that this allegation is a matter of court record; Motion Hearing October 12th, 2004, that the State of Delaware Attorney Generals office and Judge Smalls claimed that they either did not receive or have in their possession any copies of this motion for Judicial Notice. The Plaintiff states that at the Motion Hearing on October 12th, 2004 he was to provide an additional copy of the Motion for Judicial Notice for the Court and a list of witnesses to be called at trial.

58. The copy of the Motion for Judicial Notice and the witness list were provided to the court by Plaintiff on October 20th, 2004.

59. The Plaintiff states that Judge Smalls and the State of Delaware Attorney Generals office at the scheduled hearing on October 22, 2004 had forgotten and were unaware that this motion for Judicial Notice was scheduled and to be heard.

60. The Plaintiff states that Judge Smalls; when asked by Plaintiff about being heard on this Motion of Judicial Notice then questioned his court assistant and was given the copy of the motion supplied to the court on October 20, 2004.

61. The Plaintiff states that Judge Smalls at that time open a sealed envelope that contained the copy of the

18

Motion for Judicial Notice and supporting documents, approximately 100 Pages, and within less than three minutes claimed that he read and duly considered this motion and then denied it.

62. The sealed envelope supplied to the court also contained the list of 10 witnesses ordered by the Court of Common Pleas.

63. During the trial phase of the criminal proceeding Judge Smalls falsely stated that he had read the motion for Judicial Notice.

64. Judge Smalls actions were to deliberately deny justice and to assist the Delaware State Police and Department of Justice in covering up issues raised by this Motion of Judicial Notice.

65. Judge Smalls was aware of Plaintiff's intentions to pursue legal action against the Delaware State Police and knew that a guilty verdict would severely hurt the Plaintiffs case.

66. The Court of Common Pleas actions and rulings throughout this matter when applied in whole show that the trial was manipulated to insure that no viable defense could be presented and guaranteed the State of Delaware's victory.

19

67. In summary the Plaintiff was lied to by the Judge and
Prosecuting Attorney, the court allowed evidence to be
presented on behalf of a man that's been dead since 1993,
not a single witness from the court ordered witness list
was subpoenaed or caused to be at the trial by the State of
Delaware, the Plaintiff was not allowed to question the
honesty or integrity of any State witness, the court
allowed the prosecutions witness testimony whether they
were present or not, the Court allowed the prosecutor to
State where the crime was alleged to occur without any
factual basis supporting evidence or witness account, the
court allowed the prosecution to withhold discoverable
evidence that was requested several times by Plaintiff,
this evidence was later allowed over objection that could
not be argued, the court did not allow that argument, the
court did not allow counsel to be appointed, Plaintiff was
threatened with jail if he did not proceed without counsel,
there are so many violations of the rules of evidence, the
Plaintiff's rights, and the Court of Common Pleas rules
that to list them all is not practical.

68. The Court of Common Pleas by way of its Judges and
court personnel did intentionally deny Plaintiff any and
all viable and legal defenses proposed, deny counsel, deny
witnesses, deny questioning of States witnesses, deny

20

examination of the evidence against him, allow any evidence or statement against him whether it was supported by testimony or not.

69. The support for these allegations is in the Transcripts that took over seven months to prepare for a two day trial.

70. Plaintiff alleges that the Transcripts are false in parts, leaving out information further detailing the Court of Common Pleas actions of bias.

71. Judge Smalls specifically assigned himself to be the trial Judge in this matter to oversee the State of Delaware's guaranteed victory.

72. Judge Smalls assigned himself after the State canceled the original trial and rescheduled because the Plaintiff; Steven Humes, had the audacity to show up at the first trial with witnesses and legal assistance.

73. Each of the above allegations is a documented fact and cannot be disputed without lies or deceit.


**JURISDICTION AND VENUE**

74. Same as Count One


**BASIS FOR REQUESTED RELEIF**

75. The Plaintiff has the right to be treated equally by the law and fairly by the Delaware Courts, Delaware State

21

Police, and Delaware Attorney Generals Office and was denied his rights per:

76. The fourteenth amendment. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

77. The sixth amendment. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

78. The State of Delaware Court of Common Pleas did deny Plaintiff his rights guaranteed by the U.S. Constitution and are liable for the actions of its employees and the integrity of its judicial system and courts.

79. Delaware Authorities were aware of the Plaintiffs claims but took no action to remedy because they were complicit in the cover up and abuses.

22

**REMEDIES**

WHEREFORE, Plaintiff, Steven D. Humes, requests judgment in excess of the amount of $2,000,000 for lost wages, loss of main income source, loss of profession, emotional and physical pain and suffering in addition to punitive and exemplary damages and all additional costs of documentation, suit, legal costs, attorney consulting costs, expert fees and expenses, discovery costs, other direct out of pocket costs, attorney representation costs, costs of service, all miscellaneous costs, Court Costs and costs of collection together with interest.

**FOURTH COUNT**

Plaintiff repeats and reiterates the allegations of the First, Second, Third and Fifth Counts and makes them a part hereof as though set forth at length herein

**INTRODUCTION**

80. The Plaintiff, after failing to get legal remedy from the Delaware Authorities, did contact the FBI and seek to have the federal authorities investigate the alleged abuses by the Delaware Authorities under color of law violations.

23

**FACTUAL ALLEGATIONS**

81. On or about July 2005 Plaintiff contacted the FBI.

82. Plaintiff filed a written complaint stating that the Delaware State Police were denying justice and equal access to the laws.

83. The Baltimore office sent the written complaint to the Wilmington Office of the FBI.

84. Agent O'Rourke of the Wilmington Office replied to Plaintiff after multiple phone calls to his office.

85. Agent O'Rourke of the FBI Wilmington Office said that the FBI would not investigate this matter because it did not meet the criteria of criminal activity of the FBI.

86. Agent O'Rourke stated "This office is too busy, have I heard about 9/11 and about the London terrorist attacks and the FBI only investigates criminal activity that has significant commercial value of over 2 million in losses".

87. Plaintiff stated: "according to the FBI web site all matters of Police abuse such as denying justice like this are to be investigated. The Delaware State Police are denying me access to the laws and that is a color of law violation."

88. Agent O'Rourke then stated: "This office is not going to investigate this matter" "You should get an attorney".

24

89. The FBI is obligated by its duty to uphold the constitution and laws of the United States and to insure those protections to all of its citizens.

90. The Plaintiff further states for the record that there are 1186 illegal music downloads, illegal software, and other alleged criminal evidence on this hard drive that would have associated fines of over 2.0 million dollars.

91. The FBI and Agent O'Rourke's decision to not perform this investigation has denied Plaintiff his rights as a citizen of the United States as guaranteed under the fourteenth amendment of the U.S. Constitution.

## BASIS FOR REQUESTED RELEIF

92. United States Constitution, Fourteenth Amendment, §1 states that "nor shall any State … deny to any person within its jurisdiction the equal protection of the laws."

93. Per the Baltimore Federal Bureau of Investigation web site:

Civil Rights Program

The Baltimore Division is committed to aggressively investigating all alleged civil rights violations in the states of Maryland and Delaware. The FBI as a whole is

25

charged with investigating all allegations of federal civil
rights violations which include racial and religious
discrimination, color of law/use of excessive force or
misconduct by law enforcement officials and others,
involuntary servitude and slavery, violence against
reproductive health facilities, the Voting Rights Act of
1965, the Civil Rights Act of 1964, the Equal Credit
Opportunity Act, and the Civil Rights of Institutionalized
Persons Act.

94. The FBI National Website states:

The Federal Bureau of Investigation (FBI) is the primary
federal agency responsible for investigating all
allegations regarding violations of applicable federal
civil rights laws. These laws are designed to protect the
civil rights of all citizens and persons within United
States territory. The mission of the FBI's Civil Rights
Program is to enforce federal civil rights statutes and to
ensure that the protected civil rights of all inhabitants
are not abridged.

The FBI, pursuant to guidelines established in cooperation
with the Department of Justice's (DOJ's) Civil Rights
Division, requires each field office to initiate a civil

26

rights investigation whenever information is received from any source not known to be unreliable. Though most complaints are received from the victim, witness or a third party related to the victim, a significant number of cases are initiated based on media reports, complaints from community interest groups, referrals from DOJ or the local United States Attorney's Office, and Congressional inquiries.

## REMEDIES

95. Plaintiff request that this Court grant a preliminary injunction or a temporary restraining order to the Plaintiff, pursuant to Federal Rules, restraining Defendant The Federal Bureau of Investigation from displaying any and all web pages or other information media implying that matters of civil rights violations will be investigated.

96. Plaintiff request that this court order the Federal Bureau of Investigation to perform their duties under the law and perform an investigation of alleged civil rights violations made against the Delaware State Police and Delaware Department of Justice.

97. In the alternative, Plaintiffs request that damages be awarded from the Defendants, both jointly and severally, to compensate Plaintiffs for violations of his rights.

27

## FIFTH COUNT

Plaintiff repeats and reiterates the allegations of the **First, Second, Third, Fourth and Sixth Counts** and makes them a part hereof as though set forth at length herein

### INTRODUCTION

98. The Plaintiff, after being convicted in a trial that was rigged by the lower State Court, filed an appeal to the Superior Court of Delaware.

### FACTUAL ALLEGATIONS

99. The Plaintiff Motioned the Superior Court on November 4, 2004 to appoint an attorney as per the rules of Superior Court of Delaware; the rule was quoted in the motion.
100. Plaintiff was supplied with an attorney as per the rules of Superior Court on November 23, 2005, over one year later.
102. The Superior Court of Delaware ordered the lower Court of Common Pleas to furnish the transcript on February 3, 2005.
103. Superior Court Rule VIII of the Delaware court rules states that the court reporter must provide the transcript within 40 days after being so ordered.

28

104. Plaintiff filed a Motion after 117 days had passed without the transcript demanding that the Superior Court issue another order to the Court of Common Pleas court reporter to comply with the rules of the first court order.

105. No additional order was given to the lower court and the Transcripts were supplied to the Plaintiff approximately 204 days after being initially ordered.

106. The Plaintiff has motioned the Superior Court of Delaware on two instances asking for fairness and that the rules be applied as written.

107. The Plaintiff has motioned the Superior Court of Delaware on those two instances asking if fairness and the rules cannot be applied then to transfer this matter to federal court.

108. The Plaintiff alleges that the Superior Court of Delaware is deliberately stalling and using this excessive amount of time as a form of punishment.

109. Plaintiff is a computer professional with several certifications from Microsoft, Cisco, Check Point, Enterasys, Novell and others. Plaintiff was a high paid senior systems security engineer and is now unable to secure employment in his field.

29

**BASIS FOR REQUESTED RELEIF**

110. United States Constitution, Eighth Amendment Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

111. Per the Six Amendment, In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

112. This Federal Court has the right and responsibility to insure that the laws of the United States are applied to all of its citizens with fairness and equality.

113. The State of Delaware and its courts are acting outside this basic constitutional right guaranteed to the Plaintiff and all citizens of the United States.

## REMEDIES

114. Plaintiff request that this Court remove this appellant action from The Superior Court of Delaware and

30

remand it to this Federal Court for the appropriate
application of justice.

115. Plaintiff request that this Court review and cause the
Laws of Delaware to be applied and reverse the unjust
ruling of the Delaware State Court of Common Pleas and
grant the Motion for Judicial Notice giving Plaintiff all
rights to the Product including all of the legal data as
per the stated Delaware Code.

116. Plaintiff request that this Court grant a preliminary
injunction or a temporary restraining order to the
Plaintiff, pursuant to Federal Rules, restraining
International Chiropractic Pediatric Association from using
or accessing any and all data or other information gained
illegally by the unauthorized transfer from the unpaid
products and services of Plaintiff.

## SIXTH COUNT

Plaintiff repeats and reiterates the allegations of the
First, Second, Third, Fourth and Fifth Counts and makes
them a part hereof as though set forth at length herein

## INTRODUCTION

117. Same as Items 1-11

31

**FACTUAL ALLEGATIONS**

118. The retail store owned and operated by Steven Humes;

Plaintiff, was Atlantech Computers and was located at 110

Fox Hunt Drive Bear, DE in the Fox Hunt Shopping Center.

119. International Chiropractic Pediatric Assoc (I.C.P.A.)

and Ohm Chiropractic are companies that are headquartered

in Pennsylvania.

120. Plaintiff, his Contractors and employees were

contacted on or about January 2, 2004 by Tim Kreider

representing International Chiropractic Pediatric

Association (I.C.P.A.) and OHM Chiropractic.

121. Tim Kreider stated that he had lost all the data and

information on hard drives that were owned by I.C.P.A.

122. Jeanne Ohm, authorized that the hard drives be brought

to the Plaintiff's retail store by Tim Kreider from Media,

PA.

123. Plaintiff by way of written and verbal contract

between Jeanne Ohm, I.C.P.A. and Tim Kreider was authorized

to recover data from those hard drives and supply it back

to them.

124. These restoration and data recovery services required

the use of Plaintiff's Computers, Contractors computer

systems, Software resources, knowledge and skills to

provide data recovery on those hard drives.

125. Plaintiff was caused to purchase specialty software and licenses to have this data recovery performed.

126. The data was recovered by Plaintiff's contractors; FAJ Systems, and was fully usable.

127. The products and services were then turned over to International Chiropractic Pediatric Assoc. (I.C.P.A.) and OHM Chiropractic on or about 1/10/2004.

128. Plaintiff did reinstall an operating system and then install the hard drive that housed the recovered data.

129. Plaintiff asked for a copy of Microsoft office so he could demonstrate that the data was recovered.

130. The Defendant(s) claimed not to have a copy, so the plaintiff installed a copy Microsoft Office 2002; owned by plaintiff, and did demonstrate that the data was recovered and usable after installing the application software associated with the data.

131. Plaintiff did ask Defendant(s) if they wanted to buy a copy of Microsoft Office; which cost around $300.

24. The defendant(s) did not want to buy the Microsoft Office application so the plaintiff removed it from the computer.

132. In exchange for the products supplied and services performed I.C.P.A. wrote a check for $810.00 made payable to Plaintiff Computer.

33

133. After, I.C.P.A. and Ohm Chiropractic transferred the recovered data from the Plaintiff's hard drive they stopped payment on the check and made fraudulent claim that the data was not recovered or usable and returned the product (the hard drive with the data on it) to Plaintiff on or about January 20, 2004.

134. International Chiropractic Pediatric Association (I.C.P.A.) and OHM Chiropractic are presently using the recovered data without authorization from Plaintiff

135. I.C.P.A. was notified that under Delaware Code Title 6 Article 2 Sales that the data that was without authorization transferred from the products supplied belongs to Plaintiff.

136. Plaintiff has contacted I.C.P.A. and specifically demanded that they stop using the data or purchase the products under the contract and per Delaware State Code Title 6 Article 2 Sales.

137. The hard drive that was returned by I.C.P.A.; which contains the data that is illegally being used by I.C.P.A., shows the time, date, and detailed record which conclusively demonstrates when, how, and that the data was recovered and that it is fully usable.

138. The recovered data contains the entire International Chiropractic Pediatric Association (I.C.P.A.) and OHM

34

Chiropractic client database, their financials, research,
policy and procedures, multiple template letters and the
backups.

139. International Chiropractic Pediatric Association
(I.C.P.A.) and OHM Chiropractic has done this type of
behavior in the past, records show that in dealing with
another company a payment was withheld because the person
would not provide what would have been free software as
demanded by the Defendants.

JURISDICTION AND VENUE

140. This court has jurisdiction to hear this case pursuant
to the Rules of this U.S. District Court - District of
Delaware 28 U.S.C.A. §1332, since the claims for relief
occurred in Delaware and Plaintiff was a New Jersey
resident, and International Chiropractic Pediatric
Association (I.C.P.A.) and OHM Chiropractic are
Pennsylvania Companies.

141. This matter intentionally does not seek any action
involving, Statutes of Fraud, Slander, or other TORT
actions that may be brought in addition to this claim in
the appropriate States and Courts where injuries have been
made.

35

142. This action is solely for the breach of contract as provided for under Delaware State Law TITLE 6 Commerce and Trade SUBTITLE I Uniform Commercial Code ARTICLE 2 SALES.

BASIS FOR REQUESTED RELEIF

143. The Delaware State Code statutes TITLE 6 Commerce and Trade SUBTITLE I Uniform Commercial Code ARTICLE 2 SALES.

§ 2-602. Manner and effect of rightful rejection.

(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(2) Subject to the provisions of the two following sections on rejected goods (Sections 2-603 and 2-604),

**(a) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller;** and

(b) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this Article (subsection **(3) of Section 2-711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them;** but

36

(c) the buyer has no further obligations with regard to goods rightfully rejected.

(3) The seller's rights with respect to goods wrongfully rejected are governed by the provisions of this Article on Seller's remedies in general (Section 2-703). (5A Del. C. 1953, § 2-602; 55 Del. Laws, c. 349.)

**(4) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a "sale".** (5A Del. C. 1953, § 2-401; 55 Del. Laws, c. 349.)

§ 2-703. Seller's remedies in general.

Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2-612), then also with respect to the whole undelivered balance, the aggrieved seller may

(a) withhold delivery of such goods;

(b) stop delivery by any bailee as hereafter provided (Section 2-705);

37

(c) proceed under the next section respecting goods still unidentified to the contract;

(d) resell and recover damages as hereafter provided (Section 2-706);

**(e) recover damages for non-acceptance (Section 2-708) or in a proper case the price (Section 2-709);**

(f) cancel. (5A Del. C. 1953, § 2-703; 55 Del. Laws, c. 349.)

§ 2-706. Seller's resale including contract for resale.

(1) Under the conditions stated in Section 2-703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this Article (Section 2-710), but less expenses saved in consequence of the buyer's breach.

(2) Except as otherwise provided in subsection (3) or unless otherwise agreed resale may be at public or private sale including sale by way of one or more contracts to sell or of identification to an existing contract of the seller. Sale may be as a unit or in parcels and at any time and

38

place and on any terms but every aspect of the sale
including the method, manner, time, place and terms must be
commercially reasonable. The resale must be reasonably
identified as referring to the broken contract, but it is
not necessary that the goods be in existence or that any or
all of them have been identified to the contract before the
breach.

(3) Where the resale is at private sale the seller must
give the buyer reasonable notification of his intention to
resell.

(4) Where the resale is at public sale

(a) only identified goods can be sold except where there is
a recognized market for a public sale of futures in goods
of the kind; and

(b) it must be made at a usual place or market for public
sale if one is reasonably available and except in the case
of goods which are perishable or threaten to decline in
value speedily the seller must give the buyer reasonable
notice of the time and place of the resale; and

(c) if the goods are not to be within the view of those
attending the sale the notification of sale must state the
place where the goods are located and provide for their
reasonable inspection by prospective bidders; and

(d) the seller may buy.

39

(5) A purchaser who buys in good faith at a resale takes the goods free of any rights of the original buyer even though the seller fails to comply with one or more of the requirements of this section.

(6) The seller is not accountable to the buyer for any profit made on any resale. A person in the position of a seller (Section 2-707) or a buyer who has rightfully rejected or justifiably revoked acceptance must account for any excess over the amount of his security interest, as hereinafter defined (subsection (3) of Section 2-711). (5A Del. C. 1953, § 2-706; 55 Del. Laws, c. 349; 70 Del. Laws, c. 186, § 1.)

§ 2-707. "Person in the position of a seller."

(1) A "person in the position of a seller" includes as against a principal an agent who has paid or become responsible for the price of goods on behalf of his principal or anyone who otherwise holds a security interest or other right in goods similar to that of a seller.

(2) A person in the position of a seller may as provided in this Article withhold or stop delivery (Section 2-705) and resell (Section 2-706) and recover incidental damages (Section 2-710). (5A Del. C. 1953, § 2-707; 55 Del. Laws, c. 349; 70 Del. Laws, c. 186, § 1.)

40

**§ 2-708. Seller's damages for non-acceptance or repudiation.**

(1) Subject to subsection (2) and to the provisions of this Article with respect to proof of market price (Section 2-723), **the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (Section 2-710),** but less expenses saved in consequence of the buyer's breach.

**(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.** (5A Del. C. 1953, § 2-708; 55 Del. Laws, c. 349.)

**§ 2-709. Action for the price.**

(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

41

(a) of goods accepted or of conforming goods lost or

damaged within a commercially reasonable time after risk of

their loss has passed to the buyer; and

(b) of goods identified to the contract if the seller is

unable after reasonable effort to resell them at a

reasonable price or the circumstances reasonably indicate

that such effort will be unavailing.

(2) Where the seller sues for the price he must hold for

the buyer any goods which have been identified to the

contract and are still in his control except that if resale

becomes possible he may resell them at any time prior to

the collection of the judgment. The net proceeds of any

such resale must be credited to the buyer and payment of

the judgment entitles him to any goods not resold.

(3) After the buyer has wrongfully rejected or revoked

acceptance of the goods or has failed to make a payment due

or has repudiated (Section 2-610), a seller who is held not

entitled to the price under this section shall nevertheless

be awarded damages for non-acceptance under the preceding

section. (5A Del. C. 1953, § 2-709; 55 Del. Laws, c. 349;

70 Del. Laws, c. 186, § 1.)

**§ 2-710. Seller's incidental damages.**

Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach. (5A Del. C. 1953, § 2-710; 55 Del. Laws, c. 349.)

§ 2-725. Statute of limitations in contracts for sale.

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitations to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a

43

remedy by another action for the same breach such other

action may be commenced after the expiration of the time

limited and within 6 months after the termination of the

first action unless the termination resulted from voluntary

discontinuance or from dismissal for failure or neglect to

prosecute.

(4) This section does not alter the law on tolling of the

statute of limitations nor does it apply to causes of

action which have accrued before this subtitle becomes

effective. (5A Del. C. 1953, § 2-725; 55 Del. Laws, c.

349.)

## REMEDIES

144. WHEREFORE, Plaintiff, Steven D. Humes, requests

judgment in excess of the amount of $810 for damages for

non-acceptance by the buyer I.C.P.A. and incidental damages

as provided for in (Section 2-710). Plaintiff further

request judgement for expenses or commissions incurred in

stopping delivery, in the transportation, care and custody

of goods after the buyer's breach, in connection with

return or resale of the goods or otherwise resulting from

the breach in excess of $60,000 and all additional costs of

documentation, suit, legal costs, attorney consulting

costs, expert fees and expenses, discovery costs, other

direct out of pocket costs, attorney representation costs, costs of service, all miscellaneous costs, Court Costs and costs of collection together with interest.

145. Plaintiff request that this Court cause the Laws of Delaware to be applied per **(3) of Section 2-711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them;** granting Plaintiff the right to remove all data and subsequent data that was recovered but not paid for from all I.C.P.A. Computers.

146. Plaintiff request that this Court grant a preliminary injunction or a temporary restraining order to the Plaintiff, pursuant to Federal Rules, restraining International Chiropractic Pediatric Association from using or accessing any and all data or other information gained illegally by the unauthorized transfer from the unpaid products and services of Plaintiff.

By: _____

Steven D. Humes, Pro Se

Dated: January 30, 2006

45