# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

STEVEN D. HUMES,                                )
                                               )
                   Plaintiff,           )
      v.                                       )
                                               )
STATE OF DELAWARE                              )          C.A. No. 06-59 KAJ
COURT OF COMMON PLEAS, et. al.                 )
                                               )
               Defendants.          )

## STATE DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

STEPHANI J. BALLARD, I.D. #3481
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

DATED:  March 9, 2006

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS .................................................................................. iii

NATURE AND STAGE OF THE PROCEEDINGS ............................................1

ARGUMENT ...................................................................................................2

    I.       PLAINTIFF'S COMPLAINT, WITH THE POSSIBLE EXCEPTION OF ALLEGED DUE PROCESS VIOLATIONS IN COUNT 3 (CLAIMS WHICH OTHERWISE FAIL TO STATE A CLAIM), FAILS, ON ITS FACE, TO STATE ANY FEDERAL QUESTION PURSUANT TO 28 U.S.C.A. §1331..........3

    II.      TO THE EXTENT PLAINTIFF RAISES ANY FEDERAL QUESTIONS IN HIS COMPLAINT, THE COURT IS WITHOUT SUBJECT MATTER JURISDICTION, AS PLAINTIFF'S CLAIMS ARE PLAINLY BARRED BY THE ROOKER-FELDMAN DOCTRINE, THE ANTI-INJUNCTION ACT AND THE YOUNGER ABSTENTION DOCTRINE ........................................................8

    III.     STATE JUDICIAL DEFENDANTS MUST BE DISMISSED AS THEY ARE IMMUNE FROM SUIT UNDER THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY ...............................................................................................10

    IV.     PLAINTIFF SEEKS TO AMEND HIS COMPLAINT TO ADD THE STATE PROSECUTOR, SHAWN MARTYNIAK AS A DEFENDANT. PLAINTIFF CANNOT STATE A CLAIM AGAINST THE PROSECUTOR AS HE IS ABSOLUTELY IMMUNE FROM SUIT ..............................................................12

    V.      PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE STATE COURTS, AGENCIES AND OFFICIALS NAMED BY PLAINTIFF ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C.A §1983 ..............................13

    VI.     PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE STATE COURTS AND AGENCIES NAMED BY PLAINTIFF, AND STATE INDIVIDUAL DEFENDANTS SUED IN THEIR OFFICIAL CAPACITY ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY ...................................................................................13

i

VII.    EVEN IF THE INDIVIDUAL STATE POLICE OFFICER DEFENDANTS HAD BEEN SUED IN THEIR INDIVIDUAL CAPACITIES, THEY WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY ..................................................................................................15

CONCLUSION ...........................................................................................................18

## <u>TABLE OF CITATIONS</u>

<u>**Case Name**</u>                                                                                                   <u>**Page**</u>

<u>Bowers v. DeVito</u>, 686 F.2d 616 (7th Cir. 1982) .................................................................. 5, 6

<u>Bradley v. Fisher</u>, 80 U.S. 335 (1871) ................................................................................ 11

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957)...................................................................................2

<u>Coxson v. Commonwealth of Pennsylvania</u>, 935 F.Supp. 624 (W.D.Pa. 1996) ......................2

<u>Cruz v. Beto</u>, 405 U.S. 319 (1972) .......................................................................................2

<u>District of Columbia v. Feldman</u>, 460 U.S. 462 (1983)...........................................................9

<u>Edelman v. Jordan</u>, 415 U.S. 651 (1974)..............................................................................13

<u>Estate of Smith v. Marasco</u>, 318 F.3d 497 (3d Cir. 2003) .......................................................6

<u>Ex Parte Young</u>, 209 U.S. 123 (1908) ..................................................................................15

<u>Forrester v. White</u>, 484 U.S. 219 (1988)...............................................................................12

<u>Genesco v. Koch</u>, 593 F.Supp. 743 (S.D.N.Y. 1984) ..............................................................5

<u>Green v. Mansour</u>, 474 U.S. 64 (1985), *reh'g denied*, 474 U.S. 1111 (1986).........................15

<u>Growth Horizons v. Delaware County, Pa.</u>, 983 F.2d 1277 (3d Cir. 1993).............................2

<u>Halling v. McElroy</u>, 278 F.2d 252 (D.C. Cir. 1960),
  *cert. denied*, 364 U.S. 835 (1960) .................................................................................. 2

<u>Hiland Dairy, Inc. v. Kroger Co.</u>, 402 F.2d 968 (8th Cir. 1968),
  *cert. denied*, 395 U.S. 961 (1969) ............................................................................... 2

<u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976) .......................................................................... 12

<u>John v. Barron</u>, 897 F.2d 1387 (7th Cir. 1990), *cert. denied*, 498 U.S. 821 (1990) .............. 11

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).......................................................7

<u>Melo v. Hafer</u>, 912 F.2d 628 (3d Cir. 1990), *aff'd* 502 U.S. 21 (1991)............................14, 15

Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir. 1999) ...........................................15, 16

Mitchell v. Forsyth, 472 U.S. 511 (1985) ........................................................................11, 12

Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884 (3d Cir. 1977)....................2

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)....................................................................9

San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973),
      reh'g denied, 411 U.S. 959 (1973) ...............................................................................7

Scheuer v. Rhodes, 416 U.S. 232 (1974) ........................................................................13, 16

Signore v. City of McKeesport, 680 F.Supp. 200 (W.D. Pa. 1988),
      aff'd, 877 F.2d 54 (3d Cir. 1989) ...............................................................................16

Villanueva v. Carere, 873 F.Supp. 434 (D.Colo. 1994)..............................................................7

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) ....................................................15

Wooters v. Jornlin, 477 F.Supp. 1140 (D.Del. 1979), aff'd 622 F.2d 580 (3d Cir. 1980),
      cert. denied, 449 U.S. 992 (1980)...........................................................................4, 5

Younger v. Harris, 401 U.S. 37 (1971)....................................................................................10

## Statutes, Rules and Other Authorities

United States Constitution, Eleventh Amendment ..................................................................15

28 U.S.C.A. §1331....................................................................................................................3

28 U.S.C.A. §2283....................................................................................................................9

42 U.S.C.A. §1983................................................................................................... passim

Federal Rule of Civil Procedure 12(b)(1) ................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 2, 7

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

State Defendants' Motion to Dismiss and Opening Brief in support was filed on February 15, 2006. (D.I. 9-10). On February 17, 2006, Plaintiff filed a Motion to Amend his complaint. (D.I. 11). On or about February 22, 2006, Plaintiff filed his "Response to Motion to Dismiss," construed by the Court as his Answering Brief. (D.I. 12). Plaintiff also filed, on February 22, 2006, an "Emergency Motion for Order of Protection." (D.I. 13). This Motion was denied by the Court. (D.I. 16). The Court, during the teleconference on the "emergency motion" on February 28, 2006, granted State Defendants' request for an extension of time until March 10, 2006 to respond to Plaintiff's Motion to Amend and the Answering Brief. State Defendants' "Response in Opposition to Plaintiff's Motion to Amend Complaint" is filed, as a separate document, simultaneously with this Brief.

The State Defendants oppose Plaintiff's request to amend his complaint, as such amendments are futile to his ability to state a claim against the State. Nonetheless, for purposes of this reply brief, and to expedite matters before the Court, the State will, *arguendo*, treat Plaintiff's complaint as amended, and demonstrate that, even as amended, Plaintiff fails to state claims over which this Court has subject matter jurisdiction and/or upon which relief can be granted. F.R.C.P. 12(b)(1); 12(b)(6). Thus, the complaint, whether or not amended, must be dismissed as a matter of law.

## ARGUMENT

The standard of review on this motion to dismiss is worthy of reiteration. Dismissal for lack of subject matter jurisdiction (FRCP 12(b)(1)) is appropriate if the right(s) claimed by Plaintiff are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Coxson v. Commonwealth of Pennsylvania, 935 F.Supp 624, 626 (W.D. Pa. 1996)(*citing* Growth Horizons v. Delaware County, Pa., 983 F.2d 1277, 1280-81 (3d Cir. 1993). The district court will accept the factual allegations of the complaint as true and will grant the motion if it finds that plaintiff cannot invoke the Court's jurisdiction (*i.e.* demonstrate a federal question) on the face of the complaint. *See* Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).

Even if plaintiff does invoke the Court's jurisdiction, his complaint will still be dismissed if, on its face, the complaint fails to state a claim upon which relief can be granted. F.R.C.P. 12(b)(6). In considering a 12(b)(6) motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972) (*per curiam*). A *pro se* complaint may be dismissed for failure to state a claim if it appears "beyond doubt that a Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Nor does the Court have to accept as fact legal conclusions, unsupported conclusions, or sweeping legal arguments cast in the form of factual allegations. Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969); Halling v. McElroy, 278 F.2d 252 (D.C. Cir. 1960), *cert. denied*, 364 U.S. 835 (1960).

Under these standards, the complaint in the instant case, even as amended, must be dismissed because, even assuming Plaintiff's allegations as true, he has failed to state the abridgement of any

Constitutional right and has otherwise failed to state any claim upon which relief could be granted by this Court.  The arguments set forth in Plaintiff's Answering Brief show that his claims cannot survive the various defenses and immunities which mandate the dismissal of the complaint under Rule 12(b).

I.    **PLAINTIFF'S COMPLAINT, WITH THE POSSIBLE EXCEPTION OF ALLEGED DUE PROCESS VIOLATIONS IN COUNT 3 (CLAIMS WHICH OTHERWISE FAIL TO STATE A CLAIM), FAILS, ON ITS FACE, TO STATE ANY FEDERAL QUESTION PURSUANT TO 28 U.S.C.A. §1331.**

Plaintiff, in his Answering Brief, continues to state that his constitutional rights have been violated under "color of law" by State Defendants, yet entirely fails to articulate what "rights" these are.  The federal courts are plainly not a venue for every dissatisfaction with the performance of a government agency or official.  For this court to have original jurisdiction over the instant complaint, Plaintiff must have pled abridgement of some *federally protected* right.  28 U.S.C.A. §1331.  Claims will sound in this court, under 42 U.S.C.A. §1983, only for "the deprivation of any rights, privileges, or immunities *secured by the Constitution and laws* . . . ."[1]

Putting the Count 3 allegations aside for a moment, the bulk of Plaintiff's complaint against State Defendants concerns his unhappiness with the conduct of the Delaware State Police and the Department of Justice in 2004, for (1) failing to prosecute a third party individual and (2) determining that Plaintiff, himself, should be prosecuted for a computer use crime.  Plaintiff was prosecuted and found guilty by a jury in the Delaware Court of Common Pleas (CCP).

Plaintiff maintains that DSP/DOJ improperly failed to prosecute Ms. Ohm.  In response to the Motion to Dismiss, Plaintiff concedes, in his Answering Brief, that there is no constitutionally

---

1 As noted in the Opening Brief, at Count 3 of his complaint, Plaintiff has pled alleged due process violations during trial which could, hypothetically, set forth federal questions.  However, even these allegations, addressed below, are

protected right to have someone arrested or criminally charged. (D.I. 12, Ans. Brf. at A(1)(a) [page 3[2]]). To save his claim, he attempts to argue that he had the constitutional "life, liberty and property" right to have "a law enforced," presumably the criminal law which Plaintiff feels Ms. Ohm violated. This is merely another way of saying that Plaintiff believes he has a right to the prosecution of Ms. Ohm. As noted in the opening brief, it is the State's law enforcement agencies, and not individual citizens, who determine if and when a criminal prosecution will occur. Plaintiff's suggestion that he has any vested right in this process is legally untenable. Plaintiff's claim is, at bottom, a claim for provision of government services with a certain outcome. Plaintiff has no such right.

This Court has held that there is no "property right" (and therefore no basis for a §1983 claim) in the provision of government services to members of the public. In <u>Wooters v. Jornlin</u>, 477 F.Supp. 1140 (D. Del. 1979), *aff'd* 622 F.2d 580 (3d Cir. 1980), *cert. denied*, 449 U.S. 992 (1980), this Court considered the same "unusual claim" raised here: that state or county laws had created a "property interest" in the provision of a government service to plaintiffs. 477 F.Supp. at 1144. In <u>Wooters,</u> plaintiff homeowners claimed that Delaware state and county laws providing for building inspections created a property interest in properly conducted building inspections. This Court disagreed, finding that no such "property right" existed, and granted the government defendants' motion to dismiss plaintiffs' §1983 complaint.

Citing United States Supreme Court precedent, this Court explained that a plaintiff must demonstrate a legitimate claim of entitlement, grounded in state law, to the government service in question. 477 F.Supp. at 1144. Furthermore, the plaintiff must demonstrate that the governmental

---

barred by other legal doctrines and immunities which preclude relief in this Court.
2 Plaintiff's Answering Brief is not paginated. For ease of reference, this brief will refer to pages in order in the Court's official pdf document.

entity has an absolute *duty* to provide the service. "If the furnishing of the service is left to the discretion of the provider then there can be no entitlement." Id. Finally, and perhaps most importantly, "[t]he party claiming the right must . . . show that the duty is owed to him as an individual rather than to the public at large." Id.

Plaintiff plainly cannot make this showing here, with regard to the State's failure to investigate and/or prosecute Ms. Ohm at Plaintiff's request. The enforcement of the criminal laws is a matter within the sound discretion of the State. An individual citizen possesses no state or federal entitlement to a guaranteed prosecution or a particular outcome even when he reports alleged wrongdoing to the authorities.[3] Certainly the provision of investigatory services by DSP and the Department of Justice in its prosecutorial role are functions performed for the benefit of the general public—and not at the behest of individual citizens. Indeed, Plaintiff's position of "entitlement" to a prosecution would convert the criminal code into a sort of strict liability for the person Plaintiff (or any citizen) chose to accuse. Additionally, it would deprive the Department of Justice of prosecutorial discretion. Such a result is clearly illogical.

In Bowers v. DeVito, 686 F.2d 616 (7th Cir. 1982), Judge Posner held that a §1983 claim must be dismissed for failure to show deprivation of a constitutional right where plaintiff alleged that state defendants had negligently released a dangerous mental patient who subsequently murdered plaintiff's decedent. The court held:

> there is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution. *The*

---

[3] Courts have held that §1983 suits must be used in a limited, appropriate manner and not as a means to address ordinary civil disputes between parties. *See* Genesco v. Koch, 593 F.Supp. 743, 754-55 (S.D.N.Y. 1984).

> *Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order.*

686 F.2d at 618 (emphasis added).   Certainly if the plaintiff in <u>Bowers</u> could not assert a constitutional claim against a state for failing to prevent a foreseeable murder, the plaintiff in the instant case cannot maintain a case against Delaware police and prosecutors for failing to prosecute an individual who (in Plaintiff's opinion) committed a computer crime and/or a breach of contract. Plaintiff simply has no right to what he seeks.

As to Plaintiff's own criminal prosecution, he states in the Answering Brief that he is not asserting a claim for wrongful prosecution at this time.  (D.I. 12, pp. 6-7).  Indeed, Plaintiff can not legally state a claim for malicious prosecution in this Court, as one of the elements of such a claim is that the criminal proceeding be resolved in his favor.  <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003).  In this case, the jury found Plaintiff guilty.

Plaintiff's other major claim is that DSP Internal Affairs (IA) Division and the Department of Justice failed to act on "letters, faxes, [and] e-mails" which he sent to them complaining about his own prosecution and the lack of prosecution of Ms. Ohm.  (Complaint ¶¶ 35-44).   Plaintiff specifically alleges, in his proposed amended complaint, that DSP/IA "refused" to investigate his complaints.[4]  Once again this is, at best, a claim for provision of government services.  Plaintiff fails to demonstrate deprivation of any constitutionally protected entitlement via the refusal (assumed for purposes of this motion) of DSP/IA to investigate his complaints.  Plaintiff has no property right to demand the investigation or discipline of DSP officers.  Once again, no constitutional violation, and

---

4 Notably, the attachments appended to Plaintiff's answering brief show that Plaintiff was requesting Delaware's DSP/IA to investigate the conduct of a *Pennsylvania* State Trooper named Caponi.  Clearly the conduct of an out of state officer is a matter outside DSP/IA's jurisdiction.  (See, D.I. 12, Attachments 2-4).

therefore no federal question, is stated under Count Two.

As noted in Defendants' response to the Motion to Amend, Plaintiff attempts to bootstrap his §1983 claims in the amended complaint by alleging that he was "intentionally treated differently . . . based on his sex, age and social economic status [sic]." (D.I. 11, ¶25). This claim was not asserted or even alluded to in the opening complaint but, even if such amendment were permitted, it does not save Plaintiff's complaint from Rule 12(b)(6) dismissal. Entirely absent from the amended complaint are any *factual* allegations whatsoever of purposeful gender or age discrimination.[5] Plaintiff does not even state upon what basis, or classification, he was discriminated against. Plaintiff, a 48 year old male, is not a typical age or gender discrimination plaintiff. Nor does Plaintiff plead any facts whatsoever which would support a "reverse discrimination" or disparate impact claim. *See e.g.* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). A claim as significant as age or gender discrimination must necessarily be grounded in some facts which would provide notice to defendants and a minimal legal sufficiency to survive a motion to dismiss. Plaintiff fails to allege the suspect classification(s) violated. Plaintiff fails to address the manner of any alleged violations. Plaintiff fails to allege the persons who committed discrimination. Plaintiff fails to allege that he and others were similarly situated yet treated differently. Plaintiff does not plead discrimination on even the most generous reading of the complaint. Rather, he seems simply to be invoking "equal protection" words which he hopes will allow an otherwise baseless constitutional claim to survive.

Clearly, even accepting the allegations of plaintiff's complaint as true, he has failed to allege an equal protection violation or the deprivation of (or even existence of) any constitutionally

---

5  Socio-economic status has not been recognized as a protected classification for purposes of a §1983 claim. San Antonio Indep. School Dist v. Rodriguez, 411 U.S. 1, 24, 33 (1973); *see also* Villanueva v. Carere, 873 F.Supp. 434, 488 (D. Colo. 1994).

protected life, liberty or property interest.  Plaintiff may disagree with DSP's and DOJ's actions regarding his dispute with Ohm/ICPA, and his own prosecution, but he has no constitutional entitlement to sue for the enforcement of state criminal laws in the manner he personally deems appropriate.  The causes of action Plaintiff advocates would create chaos in the courts and undermine the authority of the State Executive branch at the whim of every disgruntled defendant.  Plaintiff has failed to state any constitutional claim under 42 U.S.C.A §1983 and his claims against DSP/DOJ must be dismissed.

## II.     TO THE EXTENT PLAINTIFF RAISES ANY FEDERAL QUESTIONS IN HIS COMPLAINT, THE COURT IS WITHOUT SUBJECT MATTER JURISDICTION, AS PLAINTIFF'S CLAIMS ARE PLAINLY BARRED BY THE ROOKER-FELDMAN DOCTRINE, THE ANTI-INJUNCTION ACT AND THE YOUNGER ABSTENTION DOCTRINE.

In his Answering Brief, Plaintiff offers no response to Defendants' argument that the Rooker-Feldman doctrine bars consideration by this Court of any of Plaintiff's claims regarding his criminal trial proceedings.  However, Plaintiff does acknowledge that he has appealed his CCP conviction to Superior Court, although he states that the matter has been nolle prossed.  (Ans. Brf. at p.8).  The Superior Court docket (Exhibit "C" to Defendants Opening Brief) shows that the State represented to the Superior Court that the "nolle prosequi" was entered as a result of clerical error and that the State never intended to nolle prosequi Mr. Humes charge (he had, in fact, already been convicted).  The Superior Court issued an opinion, approximately one week ago, on March 1, 2006 (attached hereto) granting the State's Motion to correct clerical mistake and vacate the nolle prosequi.  The Court also set a briefing schedule on the merits of Plaintiff's appeal from the CCP conviction, with briefing to conclude by May 16, 2006.  The matter will then be ripe for decision by the Superior Court.

Plaintiff's pending appeal is precisely why this Court lacks jurisdiction to re-consider rulings

of the Court of Common Pleas, a state court.  Plaintiff will be bound by the ultimate outcome, favorable or unfavorable, of his appeals to the Delaware Superior Court and possibly beyond.  The outcome of the State court proceedings may ultimately be appealed to the United States Supreme Court.  The fundamental premise of the <u>Rooker-Feldman</u> doctrine is that the United States District Court lacks jurisdiction to consider a state court case that may be appealed to the United States Supreme Court.  <u>District of Columbia v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415 (1923).   Plaintiff offers no argument why <u>Rooker-Feldman</u> should not entirely bar this action with regard to all issues from the state court proceedings.

Plaintiff's response to the Anti-Injunction Act's bar is that the "nolle prosequi" decision is a judicial decision that needs to be "protected" by this Court.  Plaintiff misapprehends the exceptions to the Anti-Injunction Act, 28 U.S.C.A. §2283.  The law provides that a federal court may not only enjoin state court proceedings except, *inter alia*, "to protect or effectuate *its* judgments."   28 U.S.C.A. §2283 (emphasis added).  The "judgments" referred to in the Act plainly refer to judgments of the federal court.  That is, a federal court may act to enforce *its own* judgments, but not those of a state court.  This is consistent with the principles of federalism and state sovereignty upon which the Act (and the United States Constitution) is based.  The nolle prosequi in Superior Court was not a federal judgment.  According to the Superior Court's March 1, 2006 decision, it was not even a state court judgment, but rather a clerical error which has since been vacated.

As to the <u>Younger</u> Abstention Doctrine, Plaintiff claims that it does not apply because the state court "matter has a settled disposition."   Presumably, Plaintiff again refers to the "nolle prosequi," which has been vacated by the Superior Court.  Plaintiff's state court proceedings are currently ongoing, his appeal is set for briefing and this Court should abstain from Plaintiff's

attempts to interfere with the pending state court proceedings based upon the <u>Younger</u> Abstention Doctrine. <u>Younger v. Harris</u>, 401 U.S. 37 (1971). The State of Delaware has an important interest in interpreting its own criminal and criminal procedure laws, as well as overseeing the functions of its state police, Department of Justice and state judiciary. For these reasons, abstention from interfering with the state's judicial process is appropriate and required.

### III.    STATE JUDICIAL DEFENDANTS MUST BE DISMISSED AS THEY ARE IMMUNE FROM SUIT UNDER THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY.

All of Plaintiff's allegations against the Court of Common Pleas, Superior Court, Judge Smalls and judicial staff are barred by the doctrine of absolute judicial immunity, and his complaint must be dismissed as to these Defendants. While Plaintiff now claims that "Judge Smalls was not acting in any judicial manner," the answering brief makes clear that Plaintiff's claim is based entirely on a multitude of alleged legal errors in his State court case, such as the court's alleged refusal to allow questioning of witnesses and failure to admit evidence proffered by Plaintiff. (*See e.g.* Answering Brief at p. 10-11). Even if Plaintiff were correct—even if the Court of Common Pleas had erred in its rulings—even assuming *arguendo* deliberate misconduct by the Judge, as Plaintiff alleges---the Court and the trial judge may not be sued. This is the essence of the doctrine of absolute judicial immunity.

Plaintiff apparently acknowledges that the doctrine of judicial immunity is controlling in this case, but now, having been put on notice of the legal standard by Defendants, Plaintiff asserts for the first time that Judge Smalls was acting outside the scope of his judicial capacity. (Ans. Brf. at p.10). Plaintiff, once again, offers no legal or factual support whatsoever for this new argument.

Plaintiff argues that the Court's various rulings against him were unconstitutional, and that

this divested the court and judge of jurisdiction or judicial capacity.  This novel argument is that the jurisdiction of a court or judge is dependent (retroactively) on which way the court rules on a particular motion.  This defies legal precedent, process and common sense.  Clearly, the state court had jurisdiction over all aspects of Plaintiff's criminal trial, and the presiding trial judge is entitled to judicial immunity from attack by the convicted defendant.  Finally, even an argument of "unconstitutionality" is, in essence, an argument of legal error and, as such, judicial immunity bars suit on such a claim.

Nor do Plaintiff's unsubstantiated claims about the alleged severity of Judge Smalls' actions ("criminal in nature") save his complaint.  (Ans. Brf. at 10).  The risk of a judge being hauled into court and made to defend his judicial acts by mere allegation of conspiracy or "criminal" conduct is the precise harm that judicial immunity seeks to avoid.  John v. Barron, 897 F.2d 1387, 1392 (7th Cir. 1990), cert. denied, 498 U.S. 821 (1990).  "Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action."  Bradley v. Fisher, 80 U.S. 335, 348 (1871).  One of the primary purposes of judicial immunity is to protect judges from being drawn into endless debates over their rulings by bitter litigants.  Therefore, plaintiff's false and outrageous allegations of improper conduct are not only baseless, but also of no consequence to the application of judicial immunity to this case.  Absolute judicial immunity does not depend on the degree of error or misconduct alleged against the judge.  It is an entitlement not to stand trial.  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985).

Plaintiff has also moved to amend to name two Court of Common Pleas employees as defendants: Sherry Simmons and "Jane Doe."  Plaintiff does not identify Ms. Simmons' function, but

an individual named "Sherry Simmons" is a court reporter employed by CCP.  Plaintiff claims that

Ms. Doe is "[Judge] Alex Smalls court assistant."  Plaintiff's claims against the individuals must fail

as a matter of law as he fails to allege any particular actions taken by these individuals which would

have violated his federal rights.  No case or controversy exists between Plaintiff and these

individuals on the face of the complaint.  Moreover, the court employees would be fully protected, to

the extent they acted in service to the court, by judicial immunity, Eleventh Amendment immunity

and /or qualified immunity.

**IV.   PLAINTIFF SEEKS TO AMEND HIS COMPLAINT TO ADD THE STATE PROSECUTOR, SHAWN MARTYNIAK AS A DEFENDANT.  PLAINTIFF CANNOT STATE A CLAIM AGAINST THE PROSECUTOR AS HE IS ABSOLUTELY IMMUNE FROM SUIT.**

Shawn Martyniak, Deputy Attorney General, was the prosecutor assigned to Plaintiff's CCP

trial.  Plaintiff now seeks to add DAG Martyniak to the panoply of State Defendants.  As with Judge

Smalls, Plaintiff cannot state a claim against the Deputy Attorney General as he is absolutely

immune from suit under the doctrine of prosecutorial immunity.

As with the court employees, Plaintiff has made no specific allegations that Mr. Martyniak

has violated any of his rights.  Plaintiff's claims appear to stem solely from Mr. Martyniak's

performance of his job duties as a prosecutor during Plaintiff's trial.  Plaintiff's claims (if any have

been stated) against the Deputy Attorney General are barred by the doctrine of prosecutorial

immunity.  Immunity is defined by the functions it protects and serves (*e.g.* prosecutorial/judicial),

rather than the title of the defendant.  Forrester v. White, 484 U.S. 219, 227-29 (1988).  Immunity,

whether absolute or qualified, is an entitlement not to stand trial.  Mitchell v. Forsyth, 472 U.S. 511,

526 (1985).  The United States Supreme Court has held that a prosecutor is entitled to absolute

immunity from suits under §1983.  Imbler v. Pachtman, 424 U.S. 409 (1976).  The policy behind

absolute immunity is that a prosecutor must be free to exercise his or her prosecutorial discretion without the threat of harassing and time-consuming §1983 and common law actions. <u>Id.</u> Accordingly, Plaintiff cannot maintain a claim against DAG Martyniak.

### V.  PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE STATE COURTS, AGENCIES AND OFFICIALS NAMED BY PLAINTIFF ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C.A §1983.

The State courts, agencies and individual defendants in their official capacity moved to dismiss as they are not "persons" subject to suit under 42 U.S.C.A. §1983.  This defense is a fundamental principle of Constitutional law and is beyond dispute.  Plaintiff's brief offers no relevant response.

### VI.  PLAINTIFF'S COMPLAINT MUST BE DISMISSED, AS THE STATE COURTS AND AGENCIES NAMED BY PLAINTIFF, AND STATE INDIVIDUAL DEFENDANTS SUED IN THEIR OFFICIAL CAPACITY ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.

The cases cited in Plaintiff's Answering Brief do not offer anything to contradict the law cited in the Opening Brief for the well-settled proposition that a sovereign state and its officials are immune from suit in federal court under the Eleventh Amendment.  <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63 (1974).  In fact, one of the cases he cites, <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974), succinctly states this proposition.  In <u>Scheuer</u>, the Supreme Court held that "it would seriously cripple the proper and effective administration of public affairs as entrusted to the executive branch of the government if [state officials] were subject to [civil suits for damages]." 416 U.S. at 242.  As discussed above, the same is true of judges: "imposing [potential civil liability] on judges would contribute not to principled and fearless decision-making but to intimidation." <u>Id</u> at 244 (citation omitted).

With regard to the individual defendants, although Plaintiff now attempts to amend his complaint to include them in their "individual" capacities, a plain review of Plaintiff's complaint reveals that the substance of his claims sound against Defendants only in their official capacities. The same is true of the complaint, even if Plaintiff's amendments are permitted. Whether an individual named in a civil rights complaint is sued in his or her "official" or "individual" capacity is a determination to be made on a case by case basis, based upon the pleading of the complaint itself. *See* Melo v. Hafer, 912 F.2d 628 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991). In Melo, the Third Circuit, considered such factors as the case caption, the language used in the claims for relief in the body of the complaint, and—perhaps most importantly--explained that the complaint must give the defendant adequate notice that he or she is being sued in a personal capacity. Id. 912 F.2d at 635-36.

Applying this analysis to the instant case, it is clear that all original state police defendants were sued in their official, rather than individual, capacities. The caption states the name of each officer, along with his or her rank, followed by "Delaware State Police Troop 2 & Internal Affairs." Throughout the body of the complaint, even as amended, Plaintiff also makes references to actions taken or not taken by both State agencies and the state troopers as part of their official job duties, further suggesting that the real target of the suit is the State of Delaware. For instance, plaintiff states that the "Delaware State Police" did not investigate or interview certain persons. (Compl./Amd. Compl. ¶¶ 12-15); "Delaware State Police and Department of Justice" refused to file charges (id, ¶ 24); "State Police of Delaware and Shawn Martyniak *of the Delaware Attorney Generals office* did intentionally *not perform their duties* to protect . . ." (id, ¶29, emphasis added); and that Plaintiff "begg[ed] the *authorities to perform their jobs* honorably with fairness and equal justice" (id, ¶35, emphasis added; see also ¶¶36-39). Even where individuals are named, Plaintiff

14

alleges that the ignored "evidence [of] a crime"—clearly an allegation of "on the job" misconduct by state law enforcement officials. (id, ¶40). None of these allegations clearly state claims against any defendant in his or her "individual" capacity, sufficient to put them on notice that they are being sued personally.[6] Melo, *supra*.

It is unmistakable that the real defendant in this case is the State itself, specifically the Delaware State Police and Department of Justice. Claims against a state official in his or her official capacity "is no different from a suit against the State itself. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Thus, this Court should deem defendants to have been sued in their official capacities. In that capacity, all claims for damages and retrospective relief are barred by reason of Eleventh Amendment sovereign immunity. The Eleventh Amendment does not bar suits for prospective injunctive relief against state defendants in their official capacities. Ex Parte Young, 209 U.S. 123 (1908); Green v. Mansour, 474 U.S. 64 (1985), *reh'g denied*, 474 U.S 1111 (1986). However, as discussed throughout State Defendants' briefs, due to immunities, Rooker-Feldman, etc., plaintiff has failed to invoke the jurisdiction of this court or state *any claim,* against any defendant, upon which relief may be granted.

## VI. EVEN IF THE INDIVIDUAL STATE POLICE OFFICER DEFENDANTS HAD BEEN SUED IN THEIR INDIVIDUAL CAPACITIES, THEY WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY.

Nothing in the complaint or amended complaint states a claim against any individual State defendant in his or her individual capacity. As noted in the Opening Brief, the trial court must first determine whether Plaintiff asserts a valid claim for violation of a constitutional right by defendants,

---

6 Plaintiff seriously misperceives his pleading burden when he requests that the Court "order" the State to provide a list of state officials who have "failed to uphold the law and [his] rights . . . ," in support of his Complaint. Ans. Brf., D.I. 12 at p. 15.

before considering immunity issues.  <u>Miller v. City of Philadelphia</u>, 174 F.3d 368, 374 (3d Cir. 1999).  Plaintiff has not made that showing, and his claims would be barred, nonetheless, by State Defendants' qualified immunity.

Plaintiff attempts to argue in his answering brief, that "the named DSP/DOJ officials" are not protected by qualified immunity as they failed to perform non-discretionary duties.  (D.I. 12, p.8).  Plaintiff offers no support for his suggestion that law enforcement investigations and prosecutions are ministerial acts.  To the contrary, decisions to prosecute or not prosecute are highly case-specific, discretionary decisions.  Police officers and prosecutors have full discretion over pre-trial prosecutorial matters.  Decisions not to prosecute are unreviewable.  Once a decision to prosecute is made, however, the disposition of the charge is placed (as was the case with Plaintiff), into the hands of a jury.

Specifically, as to police officers, <u>Scheuer</u>, cited *supra*, noted that they are entitled to "good faith" immunity from §1983 damages (essentially a form of qualified immunity).  416 U.S. at 245.  "[A] policeman's lot is not so unhappy that he must choose between being charges with dereliction of duty if he does not arrest when he has probably cause, and being mulcted in damages if he does." <u>Id</u> (citation omitted).  As noted in the opening brief, qualified immunity is a steep hurdle.  There can be no constitutional liability against a state actor unless the alleged "action [is] so ill-conceived or malicious that it 'shocks the conscience' . . . . officials will not be held liable for actions that are merely negligent." <u>Miller</u>, *supra*, 174 F.3d at 375 (citations omitted).

Plaintiff agrees in his answering brief, that "broad, unsupported allegations" in a complaint will not preclude dismissal.  (D.I. 12 at p. 15-16, citing <u>Signore v. City of McKeesport</u>, 680 F.Supp. 200, 203 (W.D. Pa. 1988), *aff'd*, 877 F.2d 54 (3d Cir. 1989)).  On the face of Plaintiff's complaint

16

(or amended complaint), even accepting his allegations as true, he fails to set forth any cognizable

constitutional claim or any legitimate factual basis that would defeat the defense of good faith

qualified immunity.

## <u>CONCLUSION</u>

Clearly, accepting the allegations of Plaintiff's complaint (even as Plaintiff would propose to amend) as true, he has failed to invoke the subject matter jurisdiction of this Court and has failed to state any claim, against any State Defendant, upon which relief could be granted.  For the reasons set forth herein and in Defendants' Opening Brief, the State of Delaware Defendants respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's complaint with prejudice.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**


  /s/ Stephani J. Ballard
STEPHANI J. BALLARD  (I.D. No. 3481)
Deputy Attorney General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

DATED:  March 9, 2006

18

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on March 9, 2006, she caused the attached **State Defendants' Reply Brief in Support of Motion to Dismiss Complaint** to be delivered to the following persons in the form and manner indicated:


**NAME AND ADDRESS OF RECIPIENT(S):**

Steven D. Humes
4838 Plum Run Court
Wilmington, DE  19808


**MANNER OF DELIVERY:**

\_\_\_\_\_   One true copy by facsimile transmission to each recipient.

\_\_X\_\_   Two true copies by first class mail, postage prepaid, to each recipient.

\_\_\_\_\_   Two true copies by Federal Express.

\_\_\_\_\_   Two true copies by hand delivery to each recipient.


  /s/ Stephani J. Ballard\_\_\_\_\_
Stephani J. Ballard, I.D. No. 3481
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
Attorney for Defendants

# SUPERIOR COURT
### OF THE
# STATE OF DELAWARE

RICHARD R. COOCH
*Resident Judge*

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0664

Andrew J. Witherell, Esquire
100 East 14th Street
Wilmington, Delaware 19801
Attorney for Appellant

Mark W. Bunitsky, Esquire
Shawn E. Martyniak, Esquire
Deputy Attorneys General
Department of Justice
820 North French Street, 7th Floor
Wilmington, Delaware 19801
Attorneys for Appellee

By facsimile and U.S. Mail

> **Re: Steven D. Humes v. State of Delaware**
> **Cr. ID No. 0402006855**
>
> Submitted: February 9, 2006
> Decided: March 1, 2006
>
> On the State's Motion to Correct Clerical Mistake.
> **GRANTED.**

Dear Counsel:

This case is an appeal from a criminal conviction in the Court of Common Pleas. Before this Court is the State's "Motion to Correct Clerical Mistake" brought pursuant to Superior Court Criminal Rule 36 and filed on November 17, 2005. This motion was brought after a "nolle prosequi" in this case was "filed in error" by the State in this Court on November 9, 2005, before briefing on the appeal began. For the reasons below, the State's motion is **GRANTED.**

## I. FACTS AND PROCEDURAL HISTORY

On October 27, 2004, Steven D. Humes ("Appellant") was convicted of Misuse of Computer Information[1] in the Court of Common Pleas. Defendant then filed an appeal to the Superior Court on November 11, 2004. Appellant requested appointment of counsel and this Court appointed Andrew J. Witherell, Esquire to represent Appellant.

The pertinent history begins on November 9, 2005, when the Attorney General filed what it termed a "nolle prosequi" of Appellant's case. Appellant's appeal had been inadvertently included on a list of "Unindicted Cases" from 2004 sent to the State by the Superior Court Prothonotary.[2] The State then incorrectly attempted to nolle pross the instant appeal (not realizing that this case was an appeal).[3] The Prothonotary accepted and docketed the nolle prosequi on November 9.[4] After learning of its error, the State quickly responded with the instant motion asking that the nolle prosequi be set aside because of a clerical mistake made by the State. The Deputy Attorney General who "nolle prossed" the appeal (Mark W. Butnitsky) was not the Deputy Attorney General assigned to the appeal and who had prosecuted the case in the Court of Common Pleas (Shawn E. Martyniak). Mr. Martyniak had no knowledge of Mr. Bunitsky's action until after it happened.

## II. CONTENTIONS OF THE PARTIES

The State contends that the November 9 nolle prosequi was "filed in error" and should therefore be withdrawn.[5] The State claims that it neither had the intent nor the authority to file the nolle prosequi: "It was clearly not the State's intent to 'dispose' of the underlying charges against the [Appellant] (since the State had no need to do so) nor does the State have the right or authority to dismiss the [Appellant's] appeal."[6] Moreover, the State argues that because "the nolle prosequi was filed 'without prejudice' to

---

[1] 11 *Del. C.* § 935.

[2] Mark W. Bunitsky, Esq. Aff. ¶ 4, Jan. 6, 2006.

[3] *Id.* at ¶ 5.

[4] Nolle Prosequi filed by Attorney General, D.I. 27 (Nov. 9, 2005).

[5] Letter to the Court from Mark W. Bunitsky, Esq., at 1 (Jan. 6, 2006).

[6] Letter to the Court from Mark W. Bunitsky, Esq., at 1 (Feb. 9, 2006).

reinstate the case in Superior Court, ... the State could, if all other arguments fail, choose to reinstate the charges."[7]

Appellant responds that "the 'without prejudice' [classification] was simply the State's precautionary position allowing it to argue, as it does now, mistake, and to reinstate the charge."[8] As to the State's claim that it does not have authority to file a nolle prosequi on the Appellant's appeal without permission of the Court, Appellant claims that in "a criminal appeal, the State is in the position at any time to dismiss a criminal action."[9] Appellant further argues that "[t]he State has had ample time to review and prosecute this action accordingly and has failed to do so."[10] Thus, Appellant urges that the "interest of justice mitigates" in his favor and, thus, the nolle prosequi must not be corrected.[11]

The State argues in reply that "[t]he nolle prosequi filed in this case has not caused the [Appellant] prejudice, was not filed in an effort for the State to get some advantage, nor to manipulate the case/charges to the [Appellant's] disadvantage."[12]

## III. DISCUSSION

The issue here is whether a clerical error was made by the Prothonotary in accepting and docketing a nolle prosequi incorrectly filed in this Court by the State in this pending criminal appeal from a conviction in the Court of Common Pleas.

Superior Court Criminal Rule 36 provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."[13] In Delaware, "Criminal Rule

---

[7] Letter to the Court from Mark W. Bunitsky, Esq., at 1-2 (Jan. 6, 2006).

[8] Letter to the Court from Andrew J. Witherell, Esq., at 1 (Feb. 3, 2006).

[9] *Id.* at 2.

[10] *Id.*

[11] *Id.*

[12] Letter to the Court from Mark W. Bunitsky, Esq., at 2 (Feb. 9, 2006) ("As soon as the State discovered the error, the State immediately (within about a week) moved to void the error.").

[13] Super. Ct. Crim. R. 36. *See also* 26 James Wm. Moore et al., Moore's Federal Practice § 636.02(2) (1997) ("A clerical error involves a failure to accurately record a statement or action by the court or one of the parties.").

3

36 empowers the Superior Court to correct clerical mistakes or errors in the record resulting from 'oversight or omission.'"[14] One commentator elaborates: "Errors arising from oversight or omission are generally corrected to conform to the *intention* of the court or parties at the time the error was made, which may not be reflected in their recorded statements."[15] Rule 36 does not allow the Superior Court to correct errors of parties before it, but only its own clerical errors.

To determine whether the Prothonotary erred in accepting and docketing the purported nolle prosequi, the Court must look to Superior Court Criminal Rule 48(a). Rule 48(a) provides: "The attorney general may without leave of the court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant or after conviction without leave of the court."[16]

Under the plain language of Rule 48(a), the State may not enter a nolle prosequi "without leave of the court" after there has been a conviction. Here, Appellant was convicted in the Court of Common Pleas and then appealed to this Court. Criminal Rule 48(a) is similar in both the Court of Common Pleas and the Superior Court.[17] The term "the court" in Rule 48(a), as applied to the appeal at hand, refers to the Court where the conviction occurred.[18] Because the State attempted to enter the November 9, 2005, nolle prosequi in this Court instead of the court where the conviction occurred (the Court of Common Pleas), the nolle prosequi was void *ab initio.*

---

[14] *Guyer v. State*, 453 A.2d 462, 464 (Del. 1982) (upholding Superior Court's "reassignment" of defendant's sentences under Rule 36 after a clerical error resulted in an ambiguous sentence that did not reflect the intent of the trial judge).

[15] Moore's Federal Practice, § 636.02(3).

[16] Super. Ct. Crim. R. 48(a).

[17] CCP Crim. R. 48(a):

> The Attorney General may file in open court, either orally or in writing, a nolle prosequi of an information and the prosecution thereof shall terminate, provided, however, that in any case in which a plea of guilty shall have been entered or *a verdict of guilty returned, a nolle prosequi shall be filed and entered only by and with the consent of the Court.*
> (emphasis added).

[18] If the State had wished to terminate the criminal prosecution of Appellant, the correct course of action would have been for the State to move to remand the case back to the Court of Common Pleas, and then seek the permission of that Court pursuant to Court of Common Pleas Criminal Rule 48(a) to enter the nolle prosequi.

4

Finally, there is no evidence that the State is attempting to strategically place the Appellant at a disadvantage or that Appellant is prejudiced by the delay (which Appellant attributes to the State and which the State, in turn, attributes to Appellant). Actually, the chief delay in this case was the great delay in the preparation of the entire transcript by the Court of Common Pleas Court Reporter, despite efforts by this Court to get that transcript completed. Any grounds for prejudice based on delay set forth by Appellant are without merit.

Therefore, because the nolle prosequi was void on its face, the Prothonotary technically erred in accepting it and docketing it. It was not the intent of the State to enter a void nolle prosequi, let alone to vacate Appellant's conviction in the Court of Common Pleas. Nor was it the intent of the Prothonotary to accept and docket such a void nolle prosequi. Such an error, therefore, is clerical and is within the ambit of Rule 36. It should be corrected so that the appeal may continue.

## IV. CONCLUSION

For the foregoing reasons, the State's "Motion to Correct Clerical Mistake" is **GRANTED**. Docket entry # 27 accepting the filing of the nolle prosequi is **VACATED**. Accordingly:

- Appellant's Opening Brief and Appendix on the substantive appeal shall be due **March 30, 2006**.
- The State's Answering Brief and Appendix on the substantive appeal shall be due **April 28, 2006**.
- The Appellant's Reply Brief shall be due **May 16, 2006**.

Given the age of this case, the Court asks that no extensions of these deadlines be requested.

Very truly yours,

*Richard R. Cooch*

oc: Prothonotary

5